# UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| William James and Terri Tucker (Lowe), Petitioners, | Appellate Action No. 25-13325-D |
| | District Court Civil Action No. 1:17-cv-01181-TWT |
| v. | |
| Barbara Hunt, Tyler Perry, Oprah Winfrey, et al., and Judge Thomas W. Thrash, Jr. Respondents. | Petitioners' Motion to Vacate December 18, 2025 Order (Doc. 18) and March 31, 2026 Order (Doc. 28) for Procedural Error and Violation of FRAP 35/40, and to Advance Petitioners' Petition for Rehearing En Banc (Doc. 21) to Full Court Review |

---

**PETITIONERS' MOTION TO VACATE DECEMBER 18, 2025 ORDER (DOC. 18) AND MARCH 31, 2026 ORDER (DOC. 28) FOR PROCEDURAL ERROR AND VIOLATION OF FRAP 35/40, AND TO ADVANCE PETITIONERS' PETITION FOR REHEARING EN BANC (DOC. 21) TO FULL COURT REVIEW**

---

Appellate Action No. 25-13325-D

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE**

**DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-1 and Fed. R. App. P. 26.1, the undersigned certifies

that the following persons and entities have an interest in the outcome of this case:

**Petitioners:**

1. Terri Lowe (formerly Tucker) – Plaintiff/Petitioner – Individual

2. William James – Plaintiff/Petitioner – Individual

**Petitioners' Related Entities:** 3. Tervanjay Films, Inc. – Private corporation – owned by Terri Lowe 4. Lowe Tea Company, LLC – Private corporation – owned by Terri Lowe

**Respondents:** 5. Tyler Perry – Defendant/Appellee/Respondent – Individual

6. Tyler Perry Studios, LLC – Defendant/Appellee/Respondent – Tyler Perry Studios, LLC – Defendant/Appellee/Respondent – private domestic corporation, owned or controlled by Tyler Perry. Petitioners further state, upon information and belief, that material ownership changes were not reflected in the most recent disclosure filings.

7. The Tyler Perry Company, Inc. – Defendant/Appellee/Respondent – private domestic corporation, owned/controlled by Tyler Perry

8. Oprah Winfrey – Defendant/Appellee/Respondent – Individual

9. Oprah Winfrey Network (OWN) – Defendant/Appellee/Respondent – private corporation; majority owner is Warner Bros. Discovery (NYSE: WBD); Oprah Winfrey retains minority interest

10. HARPO Productions, Inc. – Defendant/Appellee/Respondent – domestic corporation, 100% owned by Oprah Winfrey via Harpo, Inc.

11. Lionsgate Entertainment Corp. – Defendant/Appellee/Respondent – public corporation (NYSE: LGF.A, LGF.B)

12. Barbara Hunt – Defendant/Appellee/Respondent – Individual

13. Hon. Thomas W. Thrash, Jr. – U.S. District Judge, Northern District of Georgia – Defendant/Appellee/Respondent

**Counsel:** 14. Tom J. Ferber (Pryor Cashman LLP) – Counsel for Tyler Perry, Tyler Perry Studios, The Tyler Perry Company

15. Richard Gordon, Esq. – Counsel for Oprah Winfrey, OWN, HARPO, Lionsgate, Barbara Hunt

16. Matthew A. Boyd (Tucker Ellis LLP) – Counsel for Respondents (appeared Jan. 30, 2026)

**Interested Persons (Non-Parties):**

17. David Zaslav – Chief Executive Officer, Warner Bros. Discovery – majority owner of OWN

Pursuant to 11th Cir. R. 26.1-1 through 26.1-5 and Fed. R. App. P. 26.1, the undersigned certifies that the following persons and entities have an interest in the outcome of this case:

**DISCLOSURE DEFICIENCIES AND RULE VIOLATIONS**

Upon information and belief and based on the record:

Tyler Perry-Related Entities: Tyler Perry Studios, LLC, and The Tyler Perry Company, Inc. failed to file or supplement their certificates of interested persons to reflect material changes in ownership and control. Specifically, Tyler Perry Studios recently sold 25% interest in BET+ and did not report this transaction on the most recent Certificate of Interested Persons filed in February 2026, as required by 11th Cir. R. 26.1-5.

Oprah Winfrey-Related Entities: Oprah Winfrey Network (OWN) and HARPO Productions, Inc. failed to file supplemental disclosure statements reflecting changes in ownership structure and control during the pendency of this action (April 2017–present). No supplemental certificates reflecting such changes have been filed, as required by 11th Cir. R. 26.1-1 and Fed. R. App. P. 26.1.

Remaining Respondents: Barbara Hunt, Lionsgate Entertainment Corp., and other respondent entities likewise failed to file complete, current, and supplemental certificates of interested persons sufficient to permit conflict screening and preserve proceeding integrity.

**VALUE AND CONSEQUENCE OF DISCLOSURE FAILURES**

These omissions are not technical. Rule 26.1 and 11th Cir. R. 26.1-5 exist to:

Enable conflict screening and recusal analysis

Preserve the appearance and reality of impartial adjudication

Ensure the Court and parties can identify undisclosed relationships that might affect the proceeding

Maintain public confidence in the judiciary

When respondents fail to disclose material ownership changes, ownership transfers, and control shifts, the Court cannot perform its institutional duty to screen for conflicts. This is especially critical in a case already marked by allegations of judicial disqualification, tribunal conflict, and procedural distortion.

**PETITIONERS' REQUEST**

Petitioners respectfully request that the Court:

Order all Respondents and interested parties to file complete, accurate, and supplemental certificates of interested persons immediately;

Take judicial notice of any undisclosed transactions and ownership changes for purposes of recusal, conflict screening, and proceeding integrity;

Determine whether such undisclosed changes affect standing, interests, or the validity of prior orders in this proceeding.

The undersigned will supplement this certificate as necessary.

**PETITIONERS' MOTION TO VACATE DECEMBER 18, 2025 ORDER (DOC. 18) AND PARTIALLY VACATE MARCH 31, 2026 ORDER (DOC. 28) FOR PROCEDURAL ERROR AND VIOLATION OF FRAP 35/40, AND TO ADVANCE DOCUMENT 21 TO FULL COURT REVIEW**

## I.  INTRODUCTION

Petitioners respectfully move this Court to: (1) recall and vacate the December 18, 2025 Orders (Doc. 18); (2) partially vacate the March 31, 2026 Order (Doc. 28) to the extent it recharacterized Document 21 as a "motion for reconsideration"; and (3) advance Petitioners' Petition for Panel Rehearing and Petition for Rehearing En Banc (Doc. 21) to full Court review under FRAP 35 and FRAP 40, or, at minimum, reclassify the March 31 disposition as a denial of panel rehearing under FRAP 40 while preserving the granted portions of that Order.

This motion addresses a fundamental procedural defect. The Court avoided the structural constitutional issues raised in the mandamus petition, introduced new theories in its December 18, 2025 orders, and then treated Petitioners' proper FRAP 35 and FRAP 40 response to those new theories as *"reconsideration"* of the original mandamus. The March 31 Order compounded that error by invoking *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), for the proposition that federal courts possess inherent powers *"governed not by rule or statute,"* while using that

proposition to justify a procedural course that bypassed the rules that actually govern rehearing and rehearing en banc in this Court.

That use of *Chambers* was misplaced. Whatever inherent authority the Court possesses to manage its docket, that authority does not permit departure from governing statutes, rules, or constitutional constraints. See *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307–08 (1989). The Federal Rules of Appellate Procedure govern procedure in the courts of appeals. Fed. R. App. P. 1(a)(1). Mandamus proceedings are specifically governed by Fed. R. App. P. 21.

Petitions for panel rehearing and rehearing en banc are governed by Fed. R. App. P. 35 and 40. The Court's inherent authority cannot be used to recast a filing that expressly invoked FRAP 35 and FRAP 40 into a different procedural vehicle in order to avoid the mandatory consequences of those rules.

The structural defect is real and undisputed. Judge Thomas W. Thrash, Jr. was named as a defendant in the operative amended complaint (Doc. 85), was summoned and served (Docs. 94, 100), was represented by the AUSA (Doc. 116), and yet continued to issue substantive orders in the case, including orders dismissing himself, declaring the complaint a nullity, granting summary judgment, and issuing an injunction (Docs. 131, 138, 168). This is a structural due process

violation under *Williams v. Pennsylvania,* 579 U.S. 1 (2016), which holds that the participation of a disqualified adjudicator is a structural defect not subject to harmless-error analysis.

The December 18, 2025 orders did not address this structural defect. Instead, they introduced entirely new theories: that Petitioners failed to consolidate appeals, that the adequate-remedy doctrine applied, and that prior proceedings were sufficient. Those theories were not part of the mandamus petition. They were new assertions by the Court. But the *"adequate remedy"* argument is incoherent. The prior appeals, Nos. 17-14866 and 18-13553, were piecemeal by design. Judge Thrash was required to brief as a defendant-respondent in both appeals. Because he was a named party, Petitioners could not consolidate the appeals. The two appeals proceeded simultaneously in the same court, but neither could address what was happening in the other. Once Appeals 17-14866 and 18-13553 were created, Petitioners sought consolidation in both the district court and the appellate court. Those efforts were denied. Petitioners therefore did not create the piecemeal structure the Court now relies upon; they attempted to correct it. The Court cannot fault Petitioners for fragmentation they repeatedly sought to overcome.

Moreover, the March 31, 2026 Order states that the Court considered

*"the whole record including those filings referenced in the motion to supplement."*

That admission confirms that the December 18, 2025 orders were issued without the full record now acknowledged and considered. The Court cannot coherently state in December that Petitioners had adequate prior remedies, failed to consolidate, or otherwise should have proceeded differently, while later acknowledging in March that the full record had to be supplemented and considered at that stage. That contradiction is fatal to the *"adequate remedy"* rationale and confirms that Doc. 21 was a proper FRAP 35 and 40 response to newly asserted errors and misapprehensions.

For these reasons, the recharacterization of Doc. 21 was procedurally improper, logically incoherent, and must be vacated. Document 21 must be treated as filed: a petition for panel rehearing and rehearing en banc under FRAP 35 and FRAP 40, addressing the Court's own newly asserted misapprehensions, not a reconsideration of the original mandamus petition.

## II. PROCEDURAL BACKGROUND

### A. The Structural Defect in the District Court

On July 5, 2017, Petitioners filed an Amended Complaint naming Judge Thrash as a defendant (Doc. 85). On July 12, 2017, a summons was issued to him (Doc. 94).

That same day, the docket reflects a modification to Document 85. On July 19, 2017, he was served (Doc. 100). On August 31, 2017, the AUSA, Lori M. Baranik, appeared on his behalf (Doc. 116).

Petitioners moved for default based on the failure to answer Document 85 (Doc. 119) and moved for recusal (Doc. 120). Judge Thrash denied recusal (Doc. 130), granted his own dismissal (Doc. 131), and continued issuing substantive orders, including summary judgment (Doc. 138).

After Petitioners filed their notice of appeal (Doc. 144), the district court nevertheless continued merits activity through Documents 154, 157, and 168, including a summary judgment and injunction issued after the appeal was filed.

**The Court's Selective Non-Enforcement of Mandatory Disclosure Rules Further Demonstrates Institutional Avoidance of the Structural Defect**

Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1 through 26.1-5 impose mandatory corporate disclosure obligations on all parties. The rules explicitly provide that failure to comply may result in default, sanctions, or dismissal of the case.

Respondents Oprah Winfrey, Lionsgate Entertainment Corp., and other respondent entities filed corporate disclosure statements. But Judge Thrash did not. The Court did not require him to do so.

This selective non-enforcement is not neutral. Under the mandatory language of Rule 26.1-5, the Court cannot legally require some parties to file disclosure statements while exempting others. Yet that is what occurred. The practical effect was to suppress the procedural visibility of Judge Thrash's status as a named, served, and unrepresented party-defendant. If the Court had enforced Rule 26.1 equally, Judge Thrash would have been required to file his own disclosure statement or face default, sanctions, or dismissal—consequences that would have made his conflicted party status unmistakably apparent on the record. The Court's selective non-enforcement operated to conceal that visibility and to avoid the procedural consequences that would naturally flow from a judge's dual role as adjudicator and named defendant.

This asymmetric application of mandatory rules is particularly significant because it prevented the conflict-screening analysis that Rule 26.1 exists to enable. The rule's purpose is to ensure that courts and parties can identify undisclosed relationships and party status that might affect the proceeding. By selectively enforcing the rule against respondent corporations while exempting the judge from the same requirement, the Court prevented the very disclosure and conflict analysis that would have made the structural defect unmistakably clear. Critically, the other respondent parties—Oprah Winfrey, Lionsgate Entertainment Corp., Tyler Perry,

and their entities—are all represented by private counsel. They file their corporate disclosure statements through counsel. But Judge Thrash has no private representation in this proceeding. The AUSA appeared on his behalf in the district court but did not represent him in the appellate proceedings. If the Court had enforced Rule 26.1 equally, Judge Thrash would have been required to file his own corporate disclosure statement—either pro se, as an unrepresented party-defendant, or by retaining private counsel to do so. Either way, his exposed and unrepresented status as a named defendant would have become unmistakably apparent on the record. The Court's selective non-enforcement of the mandatory disclosure rule operated to suppress that visibility. It allowed the judge to remain a party to the proceeding while avoiding the procedural consequences—and the public record exposure—that would naturally attend an unrepresented defendant's obligation to file mandatory disclosures. That asymmetry cannot be reconciled with neutral application of the Court's own rules. Moreover, the fact that Judge Thrash lacked representation in the appellate proceedings—that the DOJ did not appear on his behalf—itself proves that he was functioning as a party-defendant, not as a judicial officer acting in his official capacity. The Department of Justice ordinarily appears on behalf of federal judges sued in their official capacities for actions taken within the scope of judicial duty. Its absence from the appellate proceedings here is

probative of the contrary posture reflected on the record. The DOJ's absence from the appellate proceedings is probative evidence that the conduct at issue—Judge Thrash's simultaneous adjudication while named as a defendant, his issuance of orders affecting the merits while a party to the case, his declaration of the operative complaint as a "nullity"—fell outside the scope of official judicial duty. That absence of DOJ representation is itself a concession that Judge Thrash was acting in a personal capacity, not a judicial one. The Court's selective non-enforcement of Rule 26.1 operated to suppress this probative fact from the record. Had the Court required Judge Thrash to file his own disclosure statement or appear through private counsel, his status as an unrepresented party-defendant would have been undeniable, and the structural error in the district court's proceedings would have become unmistakably apparent. The mandamus court cannot avoid confronting that structural defect by selectively declining to enforce its own disclosure rules.

## B. The Piecemeal Appellate History and the Court's Knowing Tolerance of Structural Error

Appeals Nos. 17-14866 and 18-13553 proceeded simultaneously in this Court. In both appeals, Judge Thrash was treated as a defendant-respondent and was represented by the AUSA. That treatment is dispositive. If Judge Thrash had not

been regarded as a party in Appeal No. 18-13553, there would have been no basis for requiring or permitting him to brief that appeal.

Because Judge Thrash was being treated as a party in both appeals, Petitioners could not meaningfully resolve the structural defect through piecemeal review. Each appeal was confined to its own record and procedural posture and could not fully address what was occurring in the other. Petitioners sought consolidation and related corrective relief in both the district court and this Court, but those efforts were denied.

The result was not a neutral application of appellate procedure. It was a fragmented process in which Judge Thrash was treated as a party across both appeals when that status supported continued defense of the orders below, yet the proceedings were kept separate when consolidation would have exposed the full extent of the structural defect. That contradiction is central to why ordinary appellate review was not an adequate remedy.

The Court compounded its selective non-enforcement of its own disclosure rules by recharacterizing Petitioners' FRAP 35/40 filing as a "motion for reconsideration" rather than allowing it to proceed as a petition for panel rehearing and rehearing en banc, thereby preventing the full Court from confronting the very

structural defect, disclosure asymmetry, and unrepresented party-status problem

that equal enforcement of Rule 26.1 would have made impossible to ignore.

**C. Repeated Misidentification of Document 168 Further Confirmed**

**Knowledge of the Structural Defect**

The record also reflects a repeated effort by Respondents' counsel to obscure the

provenance of Document 168. That injunction was issued by Judge Thrash and

bears the initials TWT. It was entered on August 10, 2018, long after Judge Story

had left the case in June 2017. There is therefore no legitimate basis to attribute

that order to RWS or to suggest that it was issued by a non-conflicted judge.

Yet in the 2025 recall-mandate proceedings in Appeals Nos. 17-14866 and 18-

13553, Respondents' counsel, Tom J. Ferber, cited the injunction while substituting

RWS for TWT. That substitution was material. It obscured that the injunction had

been entered by the same judge whose simultaneous status as defendant and

adjudicator created the structural defect at issue.

Petitioners later brought that misidentification to the Court's attention in the

amended mandamus filing. After Petitioners filed their rehearing petition in this

proceeding (Doc. 21), new counsel for Tyler Perry, Matthew A. Boyd, entered an

appearance (Doc. 22) and then, in Doc. 23, again invoked the injunction while

repeating the same RWS-for-TWT substitution. By then, the issue had already been

expressly identified. The repetition by different counsel, from a different firm, after notice had been given, supports the inference that this was not inadvertence, but conscious concealment.

That pattern matters here not merely because of Respondents' conduct, but because of the Court's response to it. The Court did not reject the misuse of Document 168, did not correct the misidentification of the issuing judge, and did not prevent the injunction from being repurposed against appellate review despite its express carve-out for appeals. Instead, the Court recharacterized Petitioners' FRAP 35/40 rehearing petition as a *"motion for reconsideration,"* thereby preventing the filing from being processed under the rules governing panel rehearing and rehearing en banc. In context, the Court's treatment of Petitioners' filing cannot be viewed in isolation from the already-noticed effort to obscure the identity of the judge who issued the injunction being invoked against them.

Once the Court had notice that Respondents were repeatedly misidentifying the issuing judge of Document 168 in order to invoke that injunction against appellate review, the Court could not continue to treat the matter as an ordinary procedural dispute. Its failure to correct that defect, and its subsequent recharacterization of Petitioners' rehearing petition, further confirm that the ordinary appellate process had ceased to function as an adequate remedy.

**D. The Mandamus Petition and the December 18, 2025 Orders**

Petitioners filed a mandamus petition raising the structural defect: Judge Thrash served simultaneously as adjudicator, named defendant, and issuer of orders affecting the merits.

On December 18, 2025, the Court issued orders addressing the mandamus petition. Those orders introduced new theories not part of the mandamus petition: that Petitioners failed to consolidate appeals, that prior appeals provided an adequate remedy, and that Petitioners should have raised these issues earlier.

**E. The December 27, 2025 Filing (Doc. 21)**

On December 27, 2025, Petitioners filed a document titled *"Petition for Panel Rehearing and Petition for Rehearing En Banc"* (Doc. 21). It expressly invoked FRAP 35 and FRAP 40, identified specific misapprehensions in the December 18 orders, and requested both panel rehearing and en banc consideration.

**F. The March 31, 2026 Order**

On March 31, 2026, the Court issued an order that granted Petitioners' motion to supplement the record, granted Petitioners' motion for judicial notice in part, and recharacterized Document 21 as a **"motion for reconsideration"** and denied it on that basis. In doing so, the Court cited *Chambers* for the proposition that federal courts possess inherent powers

*"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs."*

## III. THE MARCH 31 RECHARACTERIZATION WAS PROCEDURALLY IMPROPER

### A. Document 21 Was Unambiguously a FRAP 35/40 Petition

Document 21 was titled,

*"Petition for Panel Rehearing and Petition for Rehearing En Banc."*

It expressly invoked FRAP 35 and FRAP 40. It identified specific misapprehensions of law and fact in the December 18 orders. It cited the operative record. It requested both panel rehearing and en banc consideration.

The March 31 Order acknowledged this. It stated that the Court would construe the filing as a motion for reconsideration

*"even though it is styled as a 'petition for panel rehearing and petition for rehearing en banc.'"*

The Court thus admitted it knew the filing's actual form and nevertheless chose to treat it under a different label.

### B. The Recharacterization Bypassed Mandatory Procedural Requirements

Once a party files a petition meeting FRAP 40's requirements, the Court must treat it as such. FRAP 35 and FRAP 40 govern petitions for panel rehearing and

rehearing en banc. The Federal Rules of Appellate Procedure govern procedure in the courts of appeals. Fed. R. App. P. 1(a)(1). Mandamus proceedings are specifically governed by Fed. R. App. P. 21.

A court may construe an ambiguous filing according to substance, but it may not knowingly recast an unambiguous FRAP 35/40 petition into a different procedural vehicle in order to avoid the rules that govern rehearing. The Court's inherent authority to manage its affairs does not authorize it to nullify the governing appellate rules by relabeling a filing that expressly invokes those rules.

By recharacterizing Document 21 as a *"motion for reconsideration,"* the March 31 Order bypassed the procedural framework governing panel rehearing and rehearing en banc, created uncertainty about whether the panel rehearing component was adjudicated as such, obscured whether the Court acted under the correct legal framework at all, and deprived Petitioners of the lawful procedure the Rules guarantee.

## C. Chambers Does Not Authorize Departure from Governing Rules

The March 31 Order relied on *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991), quoting language that federal courts possess inherent powers:

> *"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs."*

But *Chambers* does not authorize a court of appeals to disregard the Federal Rules of Appellate Procedure, local circuit rules, statutory requirements, or constitutional guarantees.

The quoted language from *Chambers* concerns the existence of inherent authority to manage proceedings and protect the integrity of the judicial process. It does not create a free-floating power to bypass mandatory procedural rules. To the contrary, inherent authority exists to manage proceedings within the framework of governing law, not to displace it.

The need for rule-bound adjudication is especially acute where tribunal integrity and conflict-screening obligations are already implicated by unresolved disclosure and party-status irregularities.

The Court's reliance on *Chambers* to support recharacterization of a FRAP 35/40 petition into a different procedural device was therefore misplaced.

A court of appeals remains governed by federal statutes and appellate rules. See 28 U.S.C. § 1291; Fed. R. App. P. 1(a)(1), 21, 35, 40. Whatever inherent authority exists to manage proceedings cannot be used to defeat the very rules that govern those proceedings.

The Court cannot selectively apply governing law. If FRAP 35 and 40 are mandatory, they are mandatory. If *Williams v. Pennsylvania, In re Murchison, and*

*Caperton v. Massey* establish that a judge cannot serve as both adjudicator and defendant, that principle is not optional. If 28 U.S.C. § 455 mandates disqualification, the Court does not get to choose when that statute applies. The structural defects in this case are anchored in Supreme Court precedent and statutory law—not in Petitioners' litigation strategy or the Court's discretion to ignore them.

The Court's selective application of governing law raises serious equal protection and due process concerns. When a court applies *Williams v. Pennsylvania* to some litigants but not others based on party status, wealth, or institutional affiliation, it creates a two-tiered system of justice inconsistent with the rule of law. The structural defects identified here—a judge serving as both adjudicator and defendant, orders issued after jurisdictional divestiture, procedural rules bypassed through relabeling—are not matters of discretion or case management. They are constitutional and statutory imperatives that apply equally to all litigants, regardless of status or resources.

Moreover, in recharacterizing Document 21 and denying it without proper en banc circulation, this Court violated its own rules—FRAP 35, FRAP 40, and the Eleventh Circuit's governing procedures for rehearing en banc. A mandamus court's refusal to correct such defects when presented by individual litigants, while

correcting them for corporate or institutional parties, or while violating its own procedural rules in the process, would itself constitute a structural violation of equal protection and judicial integrity.

**D. The Recharacterization Prevented Full-Court Review of the Panel's Own Contradiction**

Under FRAP 35 and the Eleventh Circuit's governing en banc procedures, when a party files a petition for rehearing en banc identifying a material contradiction or structural defect in the panel's orders, the filing must be treated under the rehearing rules that govern it.

The panel's December 18, 2025 orders criticized Petitioners' litigation conduct and relied on prior appeals as an *"adequate remedy."* Petitioners' December 27, 2025 filing identified a material contradiction: the March 31, 2026 order later confirmed that the Court considered the supplemented and referenced record at that stage, thereby demonstrating that the earlier disposition had not proceeded on the same complete footing the Court later acknowledged.

Instead of treating that filing as a petition for rehearing and rehearing en banc, the panel recharacterized it as a motion for reconsideration and denied it under that label. That recharacterization prevented full-court review of the contradiction

Petitioners identified and avoided the procedural consequences that attach to a properly filed rehearing petition.

**E. Document 21 Was Not Reconsideration; It Was a Proper Response to Newly Asserted Misapprehensions**

Petitioners' mandamus petition raised the structural defect of Judge Thrash serving as both adjudicator and defendant. The December 18, 2025 orders introduced new issues: consolidation, adequate remedy, and prior appellate opportunities. Petitioners' December 27, 2025 filing addressed those new issues under FRAP 35 and FRAP 40, the rules that govern responses to points of law or fact the Court overlooked or misapprehended.

This was not relitigation of the mandamus petition. It was a proper correction of the Court's own newly asserted factual and legal errors.

## IV. THE PRIOR APPEALS WERE NOT AN ADEQUATE REMEDY

**A. The Prior Appeals Were Piecemeal by Design**

Judge Thrash was required to brief as a defendant-respondent in both Appeal Nos. 17-14866 and 18-13553. Because he was a named party, Petitioners could not consolidate the appeals. The two appeals proceeded simultaneously in the same court, but neither could address what was happening in the other. Once those appeals were created, Petitioners sought consolidation in both the district court and

the appellate court. Those efforts were denied. Petitioners therefore did not create the piecemeal structure the Court now relies upon; they attempted to correct it.

**B. The Prior Appeals Did Not Provide a Complete and Coherent Vehicle for the Structural Issue**

The March 31, 2026 Order confirms that the Court considered the supplemented record and filings referenced in the motion to supplement at that stage of the mandamus proceeding. Petitioners cannot coherently be faulted for failing to secure full review of a structural issue in prior proceedings where the record posture itself was fragmented and the proceedings were already shaped by the same conflict Petitioners sought to challenge.

**C. Judge Thrash's Contradictory Posture Across Proceedings**

In the district court, Judge Thrash declared Document 85 *"void and a nullity"* while being a named defendant and respondent. Yet in the prior appeals, Judge Thrash remained a named defendant-respondent, represented by the AUSA, while orders entered by him remained under review. By accepting briefing and participation on his behalf in that posture, the appellate process itself treated him as a defending party while orders entered by him remained under review.

A remedy is not *"adequate"* where the very proceedings invoked as the cure were already affected by the same structural defect Petitioners sought to challenge.

## V. PRESERVATION OF RECORD

1. Petitioners preserve all arguments and objections, including those concerning structural error, tribunal integrity, record completeness, and the proper application of mandatory procedural rules. The March 31, 2026 order's failure to clearly adjudicate the actual FRAP 40 filing creates uncertainty concerning finality and the scope of further appellate review, which independently warrants clarification and correction.

2. Petitioners further preserve all arguments concerning fraud upon the court, abuse of process, and the Court's inherent authority to address procedural distortion affecting the integrity of the judicial process, as set forth in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), Chambers v. NASCO, Inc., 501 U.S. 32 (1991), and Travelers Indem. Co. v. Gore, 761 F.2d 1549 (11th Cir. 1985).* These arguments may become relevant if the recharacterization is found to have been part of a broader pattern of procedural distortion.

3. Petitioners expressly preserve and incorporate the full record relevant to Document 21, including the materials accepted through the Court's grant of judicial notice and grant of supplementation. Petitioners do not challenge those grants and affirmatively seek to preserve them. Petitioners' objection

is limited to the improper recharacterization of Document 21 as a "motion for reconsideration," rather than its treatment under the standards and procedures governing FRAP 40 panel rehearing and FRAP 35 rehearing en banc. Petitioners further preserve the position that Document 21 satisfied the requirements for both forms of rehearing and therefore required a lawful panel disposition of the rehearing request and full circulation of the en banc request to the full Court.

## VI. RELIEF REQUESTED

**Petitioners respectfully request that the Court:**

1. Recall and vacate the December 18, 2025 Orders (Doc. 18) for reconsideration because those Orders introduced new theories not raised in the mandamus petition, relied on an incomplete record, and were followed by a procedurally improper recharacterization of Petitioners' FRAP 35/40 filing;

2. Partially vacate the March 31, 2026 Order (Doc. 28) only to the extent it recharacterized Document 21 as a "motion for reconsideration" and denied it on that basis;

3. Leave undisturbed the portions of the March 31, 2026 Order that granted Petitioners' motion for judicial notice and motion to supplement the record;

4. Recognize and treat Document 21 according to its substance and governing rules as a petition seeking panel rehearing under FRAP 40 and rehearing en banc under FRAP 35;

5. In the alternative, if the Court denies the requested recall and vacatur of the December 18, 2025 Orders and denies the requested partial vacatur of the March 31, 2026 Order, reclassify the March 31, 2026 disposition of Document 21 as a denial of panel rehearing under FRAP 40, rather than a denial of "reconsideration," while leaving intact the portions of the March 31 Order granting judicial notice and supplementation, so that the FRAP 35 component of Document 21 may proceed to the full Court for en banc consideration under the governing rules; and

6. Grant such other and further relief as may be just and proper to preserve the integrity of the appellate process, the completeness of the record, and the lawful treatment of Petitioners' rehearing petition.

## VII. CONCLUSION

The recharacterization of Document 21 was procedurally improper and logically incoherent. The Court invoked *Chambers* as though inherent authority allowed it to depart from the rules governing rehearing and rehearing en banc, but *Chambers* does not authorize that result. A court of appeals remains governed by federal

statutes, the Federal Rules of Appellate Procedure, local circuit rules, and constitutional guarantees.

Document 21 was a proper petition for panel rehearing and rehearing en banc under FRAP 35 and FRAP 40. It addressed the Court's own newly asserted misapprehensions and the contradiction between the Court's earlier and later treatment of the record. It was entitled to treatment under those rules, not recharacterization under another label.

Petitioners respectfully request that the Court recall and vacate the December 18, 2025 Orders (Doc. 18), partially vacate the March 31, 2026 Order (Doc. 28) to the extent it recharacterized Document 21, preserve the granted portions of the March 31 Order, and ensure that Document 21 proceeds under the rules that govern it—either through proper panel rehearing and rehearing en banc treatment under FRAP 35 and 40, or, at minimum, through reclassification of the March 31 disposition as a denial of panel rehearing sufficient to permit full Court review of the en banc component.

**Dated: March 31, 2026**

Respectfully submitted,

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## VIII. CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1) and 11th Cir. R. 32-4, I certify that this filing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2). According to the word-processing system used to prepare this document, it contains, 4,557 words, excluding the parts exempted by Fed. R. App. P. 32(f). This document was prepared in a proportionally spaced typeface (Times New Roman, 14-point) with double spacing and 1-inch margins.

Dated: On the 31st day of March 2026.

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## IX. CERTIFICATE OF SERVICE

We certify that on March 31, 2026 Petitioners' Motion to Vacate December 18, 2025 Order (Doc. 18) and March 31, 2026 Order (Doc. 28) for Procedural Error and Violation of FRAP 35/40, and to Advance Petitioners' Petition for Rehearing En Banc (Doc. 21) to Full Court Review was filed through the Court's CM/ECF system, which effected service on registered counsel. Copies were also served by U.S. Mail as follows:

**<u>Respondents Attorneys:</u>**

| | | |
|---|---|---|
| Clerk of the Court | Pryor Cashman, LLP | Richard Gordon, PC |
| Judge Thomas W. Thrash, Jr | Tom J. Ferber | 223 Brookcliff TRC |
| Northern District Court of Georgia (NDGA) | 7 Times Square | Marietta, GA 30068 |
| Atlanta Division | New York, NY 10036 | |
| 75 Ted Turner Dr. SW | | |
| Floor 22 | | |
| Atlanta, GA 30303 | | |

Matthew A. Boyd
TUCKER ELLIS LLP
3344 Peachtree Street NE, Suite 1050
Atlanta, GA 30326
 Phone: (404) 678-6365
Fax: (404) 678-6380
Email: Matthew.Boyd@tuckerellis.com

Dated: March 31 2026

Respectfully submitted,

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff